Carroll,
No. 4896.

WILLIAM A. HARMON & a.

*v.*

KENNETT COMPANY, INC. & a.

Argued February 8, 1961.
Decided March 20, 1961.

*Cooper, Hall & Cooper* (*Mr. Richard F. Cooper* orally), for the plaintiffs.

*Upton, Sanders & Upton* (*Mr. Robert W. Upton* orally), for the defendants.

DUNCAN, J. Unless errors in evidentiary rulings require that the findings and recommendations by the master be set aside, or unless, as the plaintiffs maintain, the findings contain fatal inconsistencies, the master's recommendation of the dividing line to be established between the lands of the parties is sustainable upon the record. The matter of locating upon the ground the various bounds and boundaries given in the numerous deeds and abstracts received in evidence, with the aid of other competent but conflicting evidence presented at the trial, called for determination by the master of questions of fact peculiarly within his province.

The issues between the parties were related in large measure to the description contained in the only deed purporting to describe the Kennett land by metes, bounds, and courses, a deed from Clark to Nason given in 1812. It appears not to be disputed that the westerly boundary of the Kennett land was an old road running southwesterly and capable of location upon the ground with reasonable certainty, although replaced long before trial by the "Leadmine Road" which cuts across the westerly side of the property along a more southerly course diverging from the "old road" a few hundred

feet south of the northerly Kennett boundary. The northerly boundary, dividing the Kennett land from the McNair land on the north, and marked principally by a wire fence, was established by a survey made for the defendants. (Def's Ex. N). By reference to deeds to the McNair property, and monuments upon the ground, this survey indicated that the northeast corner was at or near the white birch tree referred to in the master's findings. Around this tree the wire fence extended northerly to mark the division line between McNair on the west, and the Harmons on the east. There was also evidence of a wire fence extending southerly from the tree, toward the ancient stone wall extending north and south which the master found marked the easterly Kennett boundary. One issue regarding the location of the northeast corner arose out of the plaintiffs' evidence tending to show that the McNair lot had been purchased in 1883 for one Durgin in the name of Murray, at which time Durgin insisted upon conveyance of certain standing trees which resulted in an easterly boundary 500 feet east of the original easterly line. This was said to explain recitals in deeds of the McNairs' predecessors in 1883 and 1906 of an acreage 120 acres more or less, as compared to 100 acres more or less, as recited in earlier deeds.

The southeast corner of the Kennett land was unmarked by monuments upon the ground. The length of the southerly boundary from the old road to the southeast corner given by the deed from Clark to Nason as 332 rods, fell some 40 rods short of the southeast corner as found by the master, and 10 rods short of the line marked by Hurley in 1939 claimed by the plaintiffs to be the easterly Kennett line. This discrepancy the defendants explained by the failure of the draftsman of the deed to allow for a conveyance, made before 1797 by Jonathan Mason to Joseph Ham, of a 10-acre lot out of the southerly side of the Kennett land later mentioned as part of the southerly bound in a deed of part of the Kennett land from John Nason to John Kennett in 1829.

Both sides presented evidence bearing upon the probable location of the southeast corner. The plaintiffs relied heavily upon the locus of a hemlock post placed in the ground in 1925 by the surveyor Hurley, to mark the point where a division line between the Stacy farm and the Burke pasture, both owned by Ira Ward, intersected the southerly Kennett line. It was their claim that this point also marked the easterly end of the Kennett south boundary, and hence the southerly end of the division line between the lands

of the parties to the action. An extension of the line surveyed in 1925 to the northerly Kennett boundary constituted the so-called Hurley line of 1939 which the plaintiffs assert to be the proper division line between their property and the defendants'.

In making this claim the plaintiffs relied upon evidence regarding the location of range lines upon the ground, contained in a written statement by Ira Ward and in the testimony of other witnesses. These lines the plaintiffs sought to identify as the range lines shown by the Hersey plan of 1781, which was received in evidence. The evidence however, hardly required acceptance as conclusive. Early deeds in the plaintiffs' chain of title referred to lot numbers corresponding to numbers appearing in the twelfth range as shown by the Hersey plan, but early deeds in the defendants' chain of title referred to lots numbered differently from those in the thirteenth range on the same plan, apparently because related to a survey by Thompson, no plan of which could be produced in evidence.

Testimony of a surveyor named Bissett indicated that a range line coming off Stacy Mountain south of the properties of the parties if extended upon the ground would bisect the disputed area rather than strike the division line claimed by either side. Reliance upon extension of a supposed range line north of the Madison Hill Road would have produced no more conclusive results.

Against these considerations the defendants' evidence tended to establish that the easterly Kennett boundary was marked by the section of stone wall which the master found did mark it. This wall was in line with "a clump of two pines" on the west side of the division line between the Chick and Harmon lands and also with a wire fence extending northerly from these pines. According to one survey this fence ran along the same course for a distance of some 400 feet or to within two hundred feet of the white birch tree found by the master to mark the northeast corner of the Kennett tract. According to another survey a wire fence extended the entire distance between the two pines and the white birch.

These monuments, coupled with the evidence that the ancient stone wall bordering the Chick land was understood by William C. Kennett, the defendants' uncle, to mark the easterly boundary of the Kennett land warranted the master's acceptance of the defendants' contentions in preference to those advanced by the plaintiffs in support of the Hurley line which was unmarked on the ground before it was run in 1939.

The well-established principle of law that monuments upon the ground are controlling over measurements, references to adjoining lands, and estimates of acreage may well be considered to substantiate the conclusion reached by the master upon the general issue. *Hoban* v. *Bucklin*, 88 N. H. 73; *Hall* v. *Davis*, 36 N. H. 569, 571. See also, *Richardson* v. *Chickering*, 41 N. H. 380; *Tuftonboro* v. *Willard*, 89 N. H. 253. The findings cannot be held to be contrary to the weight of the evidence received.

We turn therefore to consideration of the plaintiffs' exceptions to the ruling admitting in evidence the statements of William C. Kennett, to specific findings by the master which are asserted to be erroneous or inconsistent, and to the denial of requested findings claimed to have been compelled by the evidence.

The plaintiffs excepted to the receipt in evidence of two sworn statements by William C. Kennett, the first dated February 1, 1951, and the second, supplementary thereto, dated February 8, 1951. The statements were received "as against [the plaintiff] Chick," and thereafter a like statement by Ira Ward, dated February 1, 1951, offered by the plaintiffs, was received in evidence. The circumstances surrounding the taking of these statements by a local lawyer were detailed at length in the testimony. The evidence warranted a finding that the taking was pursuant to an agreement between Chick and the defendants which the former testified was made "in order to preserve whatever these two men might know about . . . the disputed land, for future use." The principal statement by Kennett was to the effect that between 1876 and 1886, when the declarant frequently visited his grandparents who lived on the place, the old stone wall marked the division line opposite the Tibbetts (Chick) pasture and was prolonged at either end by means of brush fences which the declarant then helped to maintain.

The plaintiffs have argued at length that the Kennett statements were incompetent because given after the controversy arose, because he was not an owner at the time, and because the bounds were never pointed out to him as such. This argument however is inapposite, because the statements were received not in reliance upon any exception to the hearsay rule, but "on the basis of the agreement." The plaintiffs preserved no exception to the finding implied in this ruling, and we consider that it was competent for the parties to agree that the evidence thus preserved should be used in any proceeding between them. I Wig. Ev. (3d *ed.*) *s.* 7a, *p.* 222. Note, 46 Harv. L. Rev. 138, 140.

The statutory provisions found in RSA ch. 518, relating to depositions in perpetual remembrance do not purport to afford an exclusive method of preserving testimony, and the evidence was not incompetent for the reason that the statutory procedure was not followed. If the issue of the receipt and use of the statements in evidence is presented by the exception to the denial of the plaintiffs' motion to set aside the findings, no error is disclosed. The evidence was admitted "as against Chick," whose land the stone wall was found to border. The plaintiffs suggest that its admission created undue prejudice against the plaintiffs Harmon. However these plaintiffs sought no separate findings as to their land, with respect to the issues presented and sought no limitation upon the use of the evidence, beyond that stated in the ruling admitting it. *Haskell* v. *Railway*, 73 N. H. 587. The presumption is that the master made no improper use of the evidence. *Roberts* v. *Company*, 78 N. H. 491; *Searles* v. *Churchill*, 69 N. H. 530. See *Chabot* v. *Shiner*, 95 N. H. 252.

Moreover, the written statement was little more than confirmatory of oral testimony, previously received without objection by any plaintiff, that long before the controversy arose Kennett during his lifetime had pointed out the stone wall to both defendants as the easterly bound of their property.

The plaintiffs' exceptions relating to the admission in evidence of the Kennett statements, and to the use made thereof by the master, are overruled.

Th plaintiffs argue that the master failed to consider undisputed evidence regarding the Kennett southeast corner which entitled them to have their requests 9 and 10 granted, rather than denied. These requests sought findings in substance that the corner marked by Hurley for Ward in 1925 as the northeast corner of the Ward pasture was also determined by him to be the southeast corner of the Kennett land, or that the Ward corner was located "at or near" the north-south Kennett-Chick line. The evidence however did not require the findings requested, and the master properly found that Hurley and Ward set the hemlock post on the "Kennett-Ward line" and that the defendants were not advised by Hurley that he had set the post on that line "instead of at the southeast corner of the Kennett farm."

The plaintiffs predicate error upon denial of their requests 13 and 14 to the effect that evidence of a wire fence running at right angles to the southerly Kennett boundary about forty feet east

of the Hurley line of 1939 was "good evidence in support of the Hurley line as being the dividing line." The evidence was that the fence extended one to two hundred feet into the disputed area, and for five hundred feet south of it. The plaintiff Chick testified that it was built in 1912 by one of his predecessors to keep cattle off of the Ward property and "out of the road," and from "going . . . down into the woods." He further testified that in saying that the fence went "on to the Kennett land about one hundred feet," he meant "on," not "by" and that "it wasn't on the line, it was away from the line." The evidence did not require that the requests be granted.

The plaintiffs contend that the master's failure to rule on their request 5 is ground for new trial. This request sought a finding that land formerly of Ira Ward, south of the Kennett land "consists of a portion of lot 121, according to the plan by said Hersey." The master denied requests 2, 3, 4 and 6 because he was "uncertain" as to whether the lot numbers specified by the requests were according to the "Hurley [Hersey] plan or some other plan of lots in that area, and further on the ground that it is immaterial to a decision in this case." It is reasonable to assume that he meant to deny request 5 for the same reason. In any event his failure to act upon it was a denial (*Black* v. *Fiandaca,* 98 N. H. 33); and denial was proper for the same reasons that requests 2, 3, 4 and 6 were denied. It cannot be considered a flagrant disregard of undisputed evidence, as the plaintiffs would have us hold.

The plaintiffs place in the same category their request 21, seeking a finding that the ancient stone wall found to mark the easterly boundary of the Kennett land was "not on a range line." In ruling upon this request the master stated that he was "unable to determine" whether or not the wall was on a range line. This strikes us as a proper and adequate reason for the refusal to grant the request.

Plaintiffs' request 7 called for a finding that Gannett, a predecessor of the plaintiff Chick, had cut timber from the southerly portion of the disputed area. The request did not require acceptance. While there was evidence of cutting by Gannett about 1886, the evidence did not compel a finding that the cutting was on the disputed area. Nor was denial of this request necessarily inconsistent with findings made pursuant to requests 8 and 12 that there was "no evidence" that the defendants' predecessors had cut in this area or made "adverse" use of it. Lack of evidence that they had cut could not establish that Gannett had.

Plaintiffs' request 15, that the defendants "have title to no further lands eastward than those . . . described" in the Clark-Nason deed of 1812 was granted. The plaintiffs argue that this is inconsistent with denial of request 16, to the effect that the southerly Kennett line "according to distances given in the 1812 deed, fixes the southerly end of the Hurley line, so-called, as the dividing line" between the parties. If there is inconsistency here, it is not fatal. Request 16, if granted, would have precluded recognition of any failure of the Clark deed to take into account the earlier conveyance of the Ham lot out of the southerly portion of the Kennett land, thus affecting the length of the southerly boundary as specified by the deed. As stated in request 15 the defendants' title doubtless depends upon the deed; but the deed's effect was subject to the principle that monuments control measurements, in this instance stated to be 332 rods which did not fall opposite the "Hurley line, so-called."

Finally we advert to the plaintiffs' contention, in support of their motion to set aside, that the master fell into plain mistake and error because the stone wall which he found marked a section of the division line was described in one of the findings as "1481 feet in length"; and further because the recommended division line was described as running "southerly from the corner in the wire fence marked 'white birch tree' . . . to a wire fence," whereas "in fact there is only one fence which extends . . . in a southerly direction . . . ."

The master's statement that the ancient stone wall previously found to be some 1000 feet to the south of the corner in the wire fence "is 1481 feet in length," was patently erroneous. There is no reason however to set the recommendation aside on this account, since the error was obviously inadvertent, and without effect in bringing about the conclusion reached. The findings correctly describe it as "the old stone wall about forty rods in length" and as the "stone wall marked '89 rods 19 links (1481 feet)' on Def'ts Exh. N," on which the stated measurement did appear opposite the stone wall so shown by the exhibit. The master saw the wall and its length of seven hundred odd feet was stated by several witnesses. There is little probability that he was genuinely mistaken as to its length.

The argument that "in fact there is only one fence" in a southerly direction below the northeast corner discloses no "plain error" in the findings. There was evidence that one wire fence ran from a point west of the white birch in a southeasterly curve to a point south of

the birch and toward the clump of two pines, as the plaintiffs contend. However there was also evidence that a wire fence ran south from the birch to close by the twin pines, as the master found when he granted the defendants' eighth request. The recommendation specifically complained of does not necessarily suggest more than one fence extending southerly since the "corner in the wire fence marked 'white birch tree'" refers equally well to the fence which proceeded easterly and northerly, around the birch tree, to mark the McNair south and east lines.

We find no reason to set aside the master's report, either for reasons last discussed, or upon the ground that his findings and recommendation were shown to be against the weight of the evidence because of alleged errors in ruling upon the requests. It follows that the order is

*Exceptions overruled.*

KENISON, C. J., took no part in the decision; the others concurred.